Filed 10/31/23  In re A.R. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.R., et al., a Person Coming Under the Juvenile Court Law. | B328795 |
| _____ | (Los Angeles County Super. Ct. No. 20CCJP02081A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| EILEEN M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Eileen M. (Mother) appeals from the juvenile court's order terminating her parental rights to her daughter, A.R. Mother's sole contention on appeal is the Department of Children and Family Services (DCFS) failed to fulfill its duties under state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) by neglecting to interview six extended family members concerning A.R.'s possible Indian[1] heritage. Because we conclude that any error by DCFS in failing to interview these family members was harmless, we affirm.

### FACTUAL AND PROCEDURAL SUMMARY[2]

#### A.   *Overview*

Mother and J.R. (Father) share one child, A.R. (age 3 years). In 2014, the juvenile court sustained a DCFS petition for two of A.R.'s six maternal half siblings, due in part to Mother's methamphetamine use. Mother failed to reunify with these children.

On April 13, 2020, DCFS filed a Welfare & Institutions Code[3] section 300 petition alleging, inter alia, that Mother's substance abuse—including her alleged use of methamphetamine during her pregnancy—placed then one-month-old A.R. at risk of serious physical harm. The petition alleged further that Father failed to

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2] As Mother's sole argument on appeal concerns the duties of inquiry and notice imposed by ICWA and related California law, we limit our factual and procedural summary accordingly.

[3] All unspecified statutory references are to the Welfare and Institutions Code.

protect A.R. from Mother, and that his drug-related criminal history endangered A.R.'s safety and emotional well-being.

DCFS placed A.R. with a foster family, where she remained for the duration of the dependency proceedings. Mother and Father visited A.R. only inconsistently and failed to comply meaningfully with their court-ordered case plans. Accordingly, at the February 21, 2023 section 366.26 hearing, the juvenile court terminated Mother's and Father's parental rights to A.R. and designated her foster caregivers—with whom social workers reported A.R. was thriving—as her prospective adoptive parents. Mother timely appealed.[4]

## B.    *ICWA Inquiries*

Throughout the dependency proceedings, Father denied any Indian heritage. He disclaimed any such ancestry in his parental notification of Indian status form (Judicial Council Forms, form ICWA-020 (ICWA-020 form)) filed with the juvenile court, as well as during the April 17, 2020 detention hearing and in a June 12, 2020 statement to a social worker. In addition, a social worker interviewed A.R.'s paternal grandfather, who reiterated that Father did not have any Indian ancestry.

Initially, Mother also denied any Indian heritage. The ICWA child inquiry attachment (Judicial Council Forms, form ICWA-10(A)) appended to DCFS's section 300 petition indicated that Mother had denied any Indian ancestry during a March 20, 2020 interview. At the subsequent detention hearing, however, Mother reported that her maternal great-grandmother and maternal great-grandfather

---

[4] Father did not appeal the juvenile court's termination of parental rights.

3

had Indian ancestry.  The juvenile court therefore ordered DCFS to investigate Mother's possible Indian heritage.[5]

DCFS pursued several lines of investigation.  First, a social worker reviewed the dependency case files for A.R.'s half siblings.  The files disclosed that Mother had claimed both Cherokee and Apache heritage in the prior proceedings, and that—after interviewing Mother, maternal grandmother, and maternal great-grandmother—DCFS had provided notice of the half siblings' dependency proceedings to various Cherokee and Apache tribes.  Each of the tribes that responded indicated that A.R.'s half siblings were ineligible for tribal membership.  Based on this investigation, the juvenile court found that ICWA did not apply in the half siblings' dependency proceedings as to Mother.  DCFS reported the findings from its review of the maternal half siblings' dependency case files to the juvenile court in A.R.'s case.

Next, DCFS repeatedly interviewed Mother concerning her possible Indian ancestry.  Mother indicated that she had been investigating her heritage on the "ancestry.com" website.  Based on her research, she claimed that A.R.'s maternal grandmother's family descended from a Cherokee tribe and that A.R.'s maternal grandfather's family descended from an Apache tribe (i.e., the same heritage Mother had claimed in the half siblings' dependency proceedings).  In addition, Mother informed the investigating social worker that a maternal great-aunt could provide additional information concerning maternal great-grandmother's heritage.  But when the social worker contacted the maternal great-aunt, she informed the social worker that any additional family members who might have relevant information all were deceased.  Because Mother

_____

[5] Although the juvenile court also directed Mother to file an ICWA-020 form, the record does not contain any such form.

continued to provide other ICWA-related information to DCFS in a piecemeal fashion, the juvenile court eventually expressed concern that Mother was "manipulating the process." Accordingly, at a hearing on December 1, 2022—more than two and a half years into the proceedings—the court ordered that DCFS "need not ask Mother anything further about ICWA."

In addition to interviewing Mother, a social worker attempted to interview A.R.'s maternal grandmother on several occasions. The maternal grandmother failed to return several of the social worker's calls and eventually stated that she had no ICWA-related information to provide other than her belief the family had Cherokee Tohono O'odham heritage.

Finally, DCFS sent notice of A.R.'s dependency proceedings to 12 tribes: Apache Tribe of Oklahoma; Fort Sill Apache Tribe of Oklahoma; Jicarilla Apache Nation, New Mexico; San Carlos Apache Tribe of the San Carlos Reservation, Arizona; Mescalero Apache Tribe of the Mescalero Reservation, New Mexico; Tonto Apache Tribe Arizona; White Mountain Apache Tribe of the Fort Apache; Yavapai Apache Nation of the Camp Verde; Tohono O'odham Nation of Arizona; Cherokee Nation of Oklahoma; Eastern Band of Cherokee Indians; and United Keetoowah Band of Cherokee Indians. The notices provided considerable detail, including the full names, addresses, and dates of birth of Mother, Father, A.R.'s maternal grandmother, maternal grandfather, two maternal great-grandmothers, and a maternal great-grandfather. In addition, the notices provided the names of A.R.'s maternal great-great-grandmother and maternal great-great-grandfather.

Each of the 10 tribes that responded to the notices indicated that A.R. was ineligible for tribal membership.[6]

Based on DCFS's investigation, the juvenile court found at the February 21, 2023 section 366.26 hearing that there was "no reason to know that [A.R.] is an Indian child within the meaning of [ICWA]."

## DISCUSSION

Mother contends that DCFS failed to comply with state law implementing ICWA by neglecting to interview six extended family members—a maternal aunt, an adult maternal half sibling, a maternal grandfather, a paternal grandmother, and two paternal aunts—concerning A.R.'s possible Indian ancestry. We conclude, however, that any error in failing to interview these family members was harmless.

When DCFS files a petition under section 300 concerning a child, it has "an affirmative and continuing duty to inquire whether [the] child . . . is or may be an Indian child" within the meaning of ICWA. (§ 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 9 (*Isaiah W.*).) " 'The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry.' [Citation.]" (*In re C.L.* (Oct. 13, 2023, C097911) ___Cal.App.5th___ [2023 WL 6780405 at *2] (*C.L.*).) Mother urges that under California law, including rule 5.481(a)(1) of the California Rules of Court, DCFS's initial inquiry duty includes a duty to "ask . . . extended family members . . . whether the child is or may be an Indian child" whenever DCFS seeks termination of parental rights. (Cal. Rules of Court, rule 5.481(a)(1).) ICWA and related California law define " 'extended family member' " by "the law or custom of the Indian

---

[6] The two remaining tribes did not respond to the notices, despite the passage of more than 90 days.

child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [extended family member "defined as provided in [section] 1903" of ICWA].)

Appellate courts disagree about whether DCFS always must inquire of extended family members as part of its initial inquiry duty. (Compare *In re Andres R.* (2023) 94 Cal.App.5th 828, 853 [with limited case-specific exceptions, DCFS's initial inquiry duty requires it to interview extended family members "only if [a] child was taken into temporary custody without a warrant"] with *C.L.*, *supra*, ___Cal.App.5th___ [2023 WL 6780405 at p. *3] [" 'there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from [the] home' "].)

Even assuming, however, DCFS erred by failing to interview the family members Mother identifies, any inquiry error here was harmless. Although appellate courts have adopted a range of tests for examining prejudice arising from ICWA inquiry error, this division has held such error reversible only if " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citations.]" (*In re S.S.* (2022) 75 Cal.App.5th 575, 581; see also *In re S.H.* (2022) 82 Cal.App.5th 166, 175–176 [describing five different tests for analyzing prejudice].) In assessing prejudice, we look to whether " 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.' " (*S.S.*, *supra*, at p. 582, quoting *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

The record discloses that DCFS expended considerable time and effort investigating A.R.'s possible Indian heritage. With respect to A.R.'s maternal ancestry, social workers repeatedly interviewed Mother, as well as a maternal grandmother and a maternal aunt. DCFS also attempted to obtain A.R.'s maternal grandfather's contact information to schedule an ICWA interview, but neither Mother nor A.R.'s maternal grandmother could provide it. In addition, DCFS noticed a dozen Cherokee and Apache tribes, and the 10 that responded indicated that A.R. was ineligible for tribal membership. We therefore are unpersuaded by Mother's conjecture that A.R.'s other maternal aunt or her maternal half sibling might have possessed maternal grandfather's contact information or other relevant ICWA-related information unavailable to the maternal relatives DCFS interviewed. Moreover, the juvenile court's prior determination that ICWA did not apply to A.R.'s maternal half siblings further supports that any inquiry error with respect to the maternal relatives did not result in prejudice here. (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509–510.)

As for A.R.'s paternal heritage, Father repeatedly denied any Indian ancestry. Notwithstanding his denials, DCFS interviewed a paternal grandfather, who reiterated that Father did not have any Indian heritage. Mother urges that, because DCFS did not interview A.R.'s paternal grandmother or two paternal aunts, "there remained readily obtainable information that was likely to bear meaningfully upon whether A.R. was an Indian child." But A.R.'s paternal grandfather remained married to paternal grandmother, and the likelihood that she or the paternal aunts had American Indian heritage unbeknownst to both the paternal grandfather and Father is speculative.

Accordingly, we conclude DCFS's failure to interview the extended family members Mother identifies was harmless, and

8

we affirm the juvenile court's order terminating Mother's parental rights.

## DISPOSITION

The February 21, 2023 order terminating parental rights is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


WEINGART, J.